STATE OF FLORIDA, DEPARTMENT OF HEALTH AND REHABILITATIVE SERVICES, Plaintiff,

v.

FRIENDS OF CHILDREN, INC., Defendant.

No. TCA 85–7161–WS.

United States District Court, N.D. Florida, Tallahassee Division.

Dec. 24, 1986.

W. Douglas Moody, Jr., Tallahassee, Fla., for plaintiff.

Robert L. Hinkle, Elizabeth W. McArthur, Aurell, Fons, Radey & Hinkle, Tallahassee, Fla., for defendant.

STAFFORD, Chief Judge.

In this action the State of Florida, Department of Health and Rehabilitative Services (HRS), seeks a declaratory judgment against Friends of Children, Inc. (Friends). HRS urges the court to find that certain activities conducted by Friends are prohibited by Chapter 63, Florida Statutes. Specifically, HRS argues that Friends has been improperly conducting adoption related activities in Florida without a license. Friends has filed a counterclaim, urging the court to declare that their activities do not violate Florida Law. In the alternative,

Friends urges they are entitled to judgment in their favor because their activities are constitutionally protected.

Throughout the progress of this litigation the attorneys for both parties have worked diligently to resolve as much of the dispute as possible without the need for court intervention. As a result of their commendable efforts they have been able to narrow the issues, so that the court need only resolve the following six legal issues: (1) whether Friends may conduct "home studies" to assess the fitness of prospective adoptive parents in Florida; (2) if so, whether Friends may charge a fee to conduct the "home study;" (3) whether Friends may advertise its services in Florida Yellow Pages without expressly stating in those ads that they are not licensed as an adoption agency in Florida; (4) whether Florida law prohibits a pregnant woman in Florida from travelling to Georgia in order to obtain medical services, give birth and place her child for adoption there; (5) whether Florida law prohibits a mother in Florida from travelling to Georgia in order to place her child for adoption there; and, (6) whether Florida law prohibits Friends from advancing medical expenses to mothers planning to place their children for adoption in Georgia.

A non-jury trial on all of these issues was held on September 4, 1986. After considering the testimony at the trial, the memos and argument of counsel, and the relevant statutory and case law, the court concludes that the defendant Friends of Children, Inc., is entitled to judgment in its favor on the first five of these issues. HRS is entitled to judgment in its favor on the final issue. Pursuant to Rule 52(a), Federal Rules of Civil Procedure, the court makes the following findings of fact and conclusions of law.

### FINDINGS OF FACT

1. Friends of Children, Inc., is an adoption agency that is licensed in the State of Georgia. Friends is not licensed to operate as an adoption agency in the State of Florida. Friends has applied for a Florida li-

cense, but that application has been denied by HRS.

2. Although it is not licensed in Florida, Friends has conducted certain adoption related activities in the state. These activities include the following: Advertising the availability of adoption services in Florida telephone directories; placing children in Florida homes pursuant to the Interstate Compact on the Placement of Children; conducting home studies to determine the fitness of prospective adoptive parents in Florida; charging fees for these "home studies;" and paying the medical expenses of pregnant women who intend to place their children for adoption with Friends of Children in Georgia.

3. John L. Pierce, an attorney for HRS, testified at the trial that HRS's position is that such activities are a violation of Chapter 63 of Florida Statutes. He stated that he has spoken with Mr. Kurtz, the president of Friends of Children and Mr. McBride, the Office Manager at Friends of Children, and has told both of them that Friends could not conduct such activities in Florida without obtaining a license as required by § 63.202.

4. HRS's position as explained by attorney Pierce, is that any activity taken toward adoption implicates Florida's statutory scheme and cannot be taken without being licensed in Florida. Therefore, HRS's position is that no person may conduct a home study or pay medical expenses without the appropriate licensure. Although this testimony was helpful in understanding the position of HRS in the case, it was not dispositive of any relevant matters. The legal issues which were discussed by Mr. Pierce will be resolved by the court after considering all the relevant facts and legal authorities, not just the opinions of an HRS attorney.

4. Despite the fact that HRS argues a license is required before a home study can be conducted, HRS admits that in one case it permitted an agency to conduct such studies without a license. The Department did allow Childrens Services International, Inc. (CSI) to conduct home studies and charge fees for doing so. Mr. Pierce did not have personal knowledge of why such activities were permitted. But based upon records which are in evidence, he speculated that the department waived its usual policy because the children placed through CSI were from Korea and CSI represented that the Korean Government required that the particular agency do the home study. He also states that in his opinion HRS should not have permitted CSI to conduct the studies without a license. Regardless of the rationale, both parties agree that CSI was permitted to conduct home studies without a license from 1983 until 1985.

5. In light of the position taken by HRS, Friends has attempted to become licensed as an adoption agency in Florida. HRS admitted that Friends meets the minimum standards for licensure, but HRS denied the license on the grounds that Friends had unlawfully engaged in adoption activities without a license. Friends contested this denial in state administrative proceedings, where a hearing officer recommended that HRS grant the license. HRS's final decision was to deny licensure and Friends has appealed that decision to Florida's First District Court of Appeal where the matter is still pending. This cause of action was filed by HRS while the state administrative proceedings were pending.

## CONCLUSIONS OF LAW

*JURISDICTION.* This court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1332 and 2201.

■ *HOME STUDIES.* The first issue for this court's determination is whether Friends may conduct "home studies" to assess the fitness of prospective adoptive parents in Florida. Friends seeks to conduct these studies prior to the lawful placement of children in Florida pursuant to the Interstate Compact on the Placement of Children. (Interstate Compact). HRS argues that Friends is prohibited from conducting such studies in Florida because it is not a Florida licensed adoption agency.

In support of its position, HRS relies on Florida Statutes Section 63.202(2). That statute prohibits any adoption agency which is not licensed by HRS from engaging in any child placement activity. There is no more specific provision in Florida Statutes that would prohibit a non-licensed agency from conducting home studies. Therefore, in order to determine whether Friends may lawfully conduct such studies, the court must determine whether a home study is a placement activity prohibited by Section 63.202(2).

HRS argues that conducting home studies is a placement activity because the legislature has defined placement in broad terms:

'To place' or 'placement' means the process of giving or transferring of possession or custody or arranging for the giving or transferring of possession or custody of a child by any person to another person for adoption.

Florida Statutes § 63.032(9). The department urges that this is a comprehensive definition which is intended to include all activities in the adoption process from locating a prospective adoptive child and providing prenatal medical services to its natural mother through the home study. The court cannot agree with this broad reading of the statutory definition. The legislature has not included all adoption related activities in the term placement. Throughout the Florida Adoption Act, the legislature has repeatedly referred to placement as separate from home studies and other adoption related activities. For example, the preliminary home studies are discussed at length in Section 63.092. That section makes it clear that the preliminary home study is to be completed before placement occurs:

[I]n no event shall the child be placed in the prospective adoptive home prior to the completion of the preliminary study unless ordered by the court.

Fla.Stat. § 63.092(2). Further home studies, or investigations into the suitability of the adoption, are discussed in Section 63.-122. These studies must also be considered separate from the actual placement, since one of their purposes is to evaluate the placement:

The report of the investigation shall contain an evaluation of the placement....

Fla.Stat. § 63.122(7). Because the Florida legislature has referred to placement as separate from home studies, this court cannot conclude that the studies are a placement activity as defined in Section 63.-032(9).

At least one Florida court has also implicitly recognized that home studies are not a part of placement as defined by Section 63.032(9). In *HRS v. Castagnino*, 429 So.2d 102 (Fla. 2 DCA 1983), HRS argued that a Massachusetts couple could not adopt a child in Florida because such an adoption would violate Section 63.207, which prohibits out of state placement. The court rejected that argument by concluding that the placement would occur in Florida, and therefore, did not violate Section 63.207. In reaching its decision, the court recognized that the required home study would need to be performed in Massachusetts; but after reviewing the statutory definition of placement, it concluded that both the placement and the adoption would be completed in Florida. *Id.* at 103. Accordingly, that court did not consider a home study a placement activity. Because this court reaches the same conclusion, HRS's claim that Friends may not conduct home studies must be rejected.

■ *FEES FOR HOME STUDIES.* HRS next argues that if Friends can conduct home studies it cannot charge a fee for conducting such studies. In support of this argument, HRS relies on Fla.Stat. § 63.212(1)(g) which provides:

It is unlawful for any person:

. . . .

(g) except the Department of Health and Rehabilitative Services or an agency, to charge or accept any fee or compensation of any nature from anyone for making a referral in connection with an adoption.

The plain language of this statute does not support HRS's argument. Conducting home studies cannot be characterized as making referrals in connection with an adoption. Therefore, HRS's argument on this point must fail.

■ *ADVERTISING.* HRS next argues that Friends' advertisements in Florida telephone directories are unlawful absent an express statement within the ads that Friends is not a Florida licensed adoption agency. This argument must also be rejected because HRS is unable to direct the court to any provision of Florida law that expressly or implicitly prohibits such advertisements.

■ *TRAVEL BY PREGNANT WOMEN.* HRS argues that Florida law prohibits pregnant women in Florida from travelling to Georgia to obtain medical services, give birth and place their children for adoption with an agency licensed in that state. HRS relies on Fla.Stat. § 63.207(1)(a) in support of its position. That statute provides:

> ... no person except an agency or the Department of Health and Rehabilitative Services shall:
> (a) Take or send a child out of the state for the purpose of placement for adoption....

HRS urges that the court should include "fetus" in its interpretation of child. As discussed later in this order, the court is not convinced that the legislature has the authority to prohibit such activities, whether the subject of the statute is a child or a fetus. But, even assuming there are no other problems with this statute, the department has cited little authority for its argument that the legislature intended the term "child" to include a fetus. On the contrary, the legislature has not included "fetus" in its definition of "child" contained in Section 63.032(2):

> "Child" means a son or daughter, whether by birth or adoption.

The court is unwilling to accept the interpretation of "child" that is urged by the department when the definition adopted by the legislature is clearly to the contrary. Having rejected the interpretation urged by HRS, the court must also conclude that Section 63.207(1) does not prohibit a pregnant woman from leaving the state, giving birth and placing her child for adoption out of state.

*SURRENDERING CHILDREN FOR ADOPTION OUT OF STATE.* HRS next urges that Florida law prohibits Florida residents from taking a child out of the state for the purpose of placing the child for adoption. HRS relies on Section 63.-207(1) in support of this claim. That section provides:

> Unless the child is to be placed with a relative within the third degree or with a stepparent, no person except an agency or the Department of Health and Rehabilitative Services shall:
> (a) Take or send a child out of the state for the purpose of placement for adoption.

Fla Sta. § 63.207(1). Friends concedes that if the "agency" referred to in the statute is defined as an adoption agency licensed by the State of Florida, then HRS is correct in claiming that the law prohibits parents from surrendering a child for adoption with Friends in Georgia. However, Friends argues that such an interpretation would render the statute unconstitutional. Therefore, Friends urges that the term "agency" be read to include any agency duly licensed by the appropriate regulatory authority in the state where the placement will occur. Such an interpretation, according to Friends, will preclude constitutional problems and allow Friends to continue providing adoption services to Florida residents who travel to Georgia.

■ The legislature has included a statutory definition of agency in the Florida Adoption Act. This definition supports HRS's interpretation of the statute:

> "Agency" means any child-placing agency licensed by the department pursuant to S. 63.202 to place minors for adoption.

Fla.Stat. § 63.032(7). However, Section 63.032 also states that the definition need not apply if "the context otherwise re-

quires." Here the court agrees with Friends that the term agency must be read more broadly than the statutory definition if Section 63.207 is to pass constitutional muster.

Reading "agency" as an agency licensed in Florida creates two constitutional problems with the statute: first, it implicates the fundamental right to travel; second, it allows Florida to attempt to exercise extraterritorial jurisdiction.

The Supreme Court has often recognized the right to travel from one state to another as a fundamental right protected by the constitution. *Jones v. Helms,* 452 U.S. 412, 418, 101 S.Ct. 2434, 2439, 69 L.Ed.2d 118 (1981). *Shapiro v. Thompson,* 394 U.S. 618, 629–31, 89 S.Ct. 1322, 1328–29, 22 L.Ed.2d 600 (1969); *United States v. Guest,* 383 U.S. 745, 757–59, 86 S.Ct. 1170, 1177–78, 16 L.Ed.2d 239 (1966). Therefore, any statute that affects this right to travel is subject to strict scrutiny. That is, the statute must be shown to be the least restrictive means of protecting a compelling state interest. *Shapiro,* 394 U.S. at 634, 89 S.Ct. at 1331. The court agrees that there is a compelling state interest in this case: the state's interest in the health and welfare of children to be placed for adoption, as well as that of both the natural and adopting parents. But the court is not convinced that only an agency licensed in Florida is capable of protecting those interests. Therefore, a statute which only allows a Florida licensed agency to place children out of state is not the least restrictive means of furthering the state interest and must be regarded as constitutionally flawed.

In addition, if the statute is read as urged by HRS, then it must be viewed as an attempt by the Florida legislature to exercise extraterritorial jurisdiction. In *Bigelow v. Virginia,* 421 U.S. 809, 95 S.Ct. 2222, 44 L.Ed.2d 600 (1975), the Supreme Court noted that states do not have the power to prevent their residents from travelling to other states to obtain services legally available there. In *Bigelow,* an agency that provided abortion referral services in New York advertised in Virginia. At the time, abortions were legal in New York, but illegal in Virginia. The publisher of the Virginia newspaper that carried the advertisement was convicted of violating a Virginia statute that prohibited advertisements that encourage abortions. The court reversed the conviction, holding that Virginia's prohibition against such advertisements was an impermissible violation of the First Amendment.

The *Bigelow* decision was based, in part, on the court's observation that Virginia had no authority to prevent its residents from travelling to New York to obtain the abortion services that were lawfully available there:

> The Virginia Legislature could not have regulated the advertiser's activity in New York, and obviously could not have proscribed the activity in that state. Neither could Virginia prevent its residents from travelling to New York to obtain those services or, as the state conceded ... prosecute them for going there. Virginia possessed no authority to regulate the services provided in New York....

*Id.* at 823–824, 95 S.Ct. at 2233–2234 (citations and footnotes omitted). In this case, Florida argues it may prevent its citizens from travelling to Georgia to place a child for adoption because of the state's interest in the welfare of the child. But in *Bigelow,* the Supreme Court made it clear that, "A State does not acquire power or supervision over the internal affairs of another State merely because the welfare and health of its own citizens may be affected when they travel to that State." *Id* at p. 824, 95 S.Ct. at 2234.

Accordingly, reading Section 63.207 as urged by HRS would necessarily lead this court to conclude the statute was unconstitutional. But this result can be avoided if the term agency is read to include child placing agencies licensed in other states as urged by Friends. Such an interpretation would survive strict scrutiny analysis. As previously stated, the court agrees that there is a compelling state interest in the welfare of the child and others affected.

By including child placement agencies licensed by other states in the term "agency," the court is also convinced that Florida's statute is the least restrictive alternative for protecting that interest. The statute then recognizes the need for either family members or some duly authorized placement agency to be involved in an adoption in order to protect the interests of those involved—but does not limit agencies to those licensed by the State of Florida when there is no evidence that agencies licensed in sister states are any less qualified to protect those interests.

Broad reading of the term "agency" also avoids any conflict with *Bigelow* because the statute would then recognize the right of Florida's citizens to travel to other states to place a child for adoption with an agency licensed in that state.

It is an axiom of statutory construction that all acts of the legislature should be presumed valid and constitutional. As explained in a leading treatise, this presumption allows a court to reject an interpretation that would create serious constitutional difficulties:

> It is frequently asserted by the courts that every presumption favors the validity of an act of the legislature and that all doubts must be resolved in support of the act. Likewise, it is presumed that the legislature acted with integrity and with an honest purpose to keep within constitutional limits.... As a corollary of the presumption favoring constitutionality, the fact that one among alternative constructions would involve serious constitutional difficulties is reason to reject that interpretation in favor of another. It has even been said that "a strained construction is not only permissible, but desirable, if it is the only construction that will save constitutionality."

Sutherland Statutory Construction § 45.11 (4th Ed.1984).

■ Although the legislature has generally defined the term "agency" in the Florida Adoption Act as an adoption agency licensed pursuant to Florida Statutes, it has provided for other meanings where the context so requires. Fla.Stat. § 63.032. In the context of Section 63.207, this narrow definition must be rejected in order to preserve the validity and constitutionality of the statute. Therefore, the court agrees with Friends that the term "agency" should be read in Section 63.207 to include any agency duly licensed by the appropriate regulatory authority in the state where placement will occur. Given such an interpretation, the court must also reject HRS's claim that no person may take a child out of the state for the purpose of placing the child for adoption. A child may be taken out of state and placed for adoption under the terms of Section 63.207 as interpreted in this order.

*ADVANCED EXPENSES:* HRS's last claim is that Florida law prohibits Friends from advancing medical expenses to expectant mothers who are planning to place their child with Friends for adoption in Georgia.

■ HRS first argues that payment of expenses is a placement activity prohibited by Section 63.202(2). Because the court has already rejected the department's broad interpretation of placement, this argument is also rejected.

■ HRS also argues that the payments are prohibited by Section 63.212(1)(d), which makes it a felony to arrange for the sale or surrender of a child to another person for anything of value. The statute does provide for an exception allowing payment of expenses in certain limited circumstances:

> If a child is being adopted ... through the Department of Health and Rehabilitative Services, an agency, or an intermediary, nothing herein shall be construed as prohibiting the person who is contemplating adopting the child from paying the actual prenatal care and living expenses of the mother of the child to be adopted, nor from paying the actual living and medical expenses of such mother for a reasonable time, not to exceed 30 days after the birth of the child.

Fla.Stat. 63.212(1)(d). Unlike Section 63.-207(1)(a), the agency referred to in this section should be read as defined by the legislature; that is, an agency licensed pursuant to Florida Statutes. Because Friends is not licensed in Florida, this exception does not apply to the defendant.

The statutory definition of "agency" must be accepted in this instance because there is nothing in the context of the statute that would require or suggest a broader reading of the term. There is no authority in the statute for Florida to prosecute a person for conducting the prohibited activities outside the State of Florida. For example, there is no indication in the statute that Florida would attempt to prosecute a person who travels to Georgia and arranges to surrender a child for adoption there in exchange for advanced medical expenses. Florida would have no jurisdiction in such a case and would have to rely on Georgia to prosecute such activities if they were illegal there. Since the statute necessarily applies only to activities in Florida, there is no problem with extraterritorial jurisdiction. Nor, does the statute infringe on the right to travel between the states. It must be admitted that advancement of medical expenses is one of the adoption services lawfully provided by Friends in Georgia. As stated before, Florida residents have a constitutional right to travel to Georgia to obtain those services. But, Florida residents have no constitutionally protected right to receive those services in Florida if Florida deems it unlawful to receive them, as it has done by this statute. There is no infringement of the right to travel in such legislation; nor, is the court aware of any other potential constitutional difficulties. Accordingly, HRS is correct in claiming that Florida law prohibits Friends from advancing medical expenses to any mother in Florida who is planning to place her child for adoption out of state.

### CONCLUSION

Accordingly, it is ORDERED:

1. Defendant Friends of Children is entitled to declaratory judgment as follows:

Defendant may conduct "home studies" to assess the fitness of prospective adoptive parents in Florida; Defendant may charge a fee for such "home studies;" Defendant may advertise its adoption services in Florida without expressly stating in the ads that it is not licensed in Florida; A pregnant woman in Florida may travel to Georgia in order to obtain medical services, give birth and place her child for adoption with defendant; and, Florida residents may take a child and travel to Georgia to place the child for adoption with the defendant.

2. Plaintiff State of Florida, Department of Health and Rehabilitative Services, is entitled to declaratory judgment as follows: Florida Statute Section 63.212(1)(d) prohibits the defendant from advancing medical expenses to expectant mothers in Florida.

3. The Clerk of the Court is authorized to enter judgment accordingly.